### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

FILED

JUL 27 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| Magloire K. Placide Ayissi Etoh ) | |
| 131 Summit Hall Road ) | |
| Gaithersburg, MD, 20877 ) | |
| Tel: 301-963-1972 ) | |
| Plaintiff, ) | |
| VS. ) | |
| ) | CIVIL ACTION NO. |
| Fannie Mae ) | |
| 3900 Wisconsin, Avenue, NW ) | |
| Washington, DC, 20004 ) | |
| and ) | |
| Michael J. Williams, in his capacity of ) | |
| Chief Executive Officer of Fannie Mae ) | |
| 3900 Wisconsin Avenue, NW, DC, 20004; ) | |
| and ) | |
| Jacqueline K. Wagner, in her capacity of ) | |
| Former Chief Audit Executive of ) | |
| Fannie Mae, 8484 WestPark Drive, ) | |
| McLean, 22102; ) | |
| and ) | |
| Thomas Cooper, in his capacity of ) | |
| Former Vice-President of Fannie Mae ) | |
| 2810 Thaxton Lane, Oakton, VA, 22124 ) | |
| and ) | |
| Sanda Pesut, in her capacity of ) | |
| Manager at Fannie Mae ) | |
| 4000 Wisconsin Avenue, NW, DC, 20004; ) | |
| Defendants. ) | |

Case: 1:10-cv-01259
Assigned To : Huvelle, Ellen S.
Assign. Date : 7/27/2010
Description: Employ. Discrim

**COMPLAINT**

**(Trial by Jury Requested)**

Plaintiff, for his complaint against the defendants, alleges:

JURISDICTION AND VENUE

1. Plaintiff invokes this Court's jurisdiction under *28 U.S.C. § 1331* on the ground that this

action arises under *42 U.S.C. § 1981*. Plaintiff invokes this Court's jurisdiction under tort laws.

1

Plaintiff invokes this Court's jurisdiction with respect to his claims based on the common law of the District of Columbia.

2. The venue of this action is properly placed in the District of Columbia pursuant to *28 U.S.C. § 1391* because the unlawful employment practices alleged below and plaintiff's claims arise in this district. Also, pursuant to the "Charter Act" Section 302 B: which stipulates: "*Fannie Mae, the body corporate known as Federal National Mortgage Association. The corporation shall maintain its principal office in the District of Columbia or the metropolitan area and thereof shall be deemed, for the purpose of jurisdiction and venue in civil actions, to be a District of Columbia corporation*".

PARTIES

3. Plaintiff is a black citizen of the United States and a resident of Gaithersburg, Montgomery County, Maryland, in the 8th District of Maryland. He was employed by the defendant at all times relevant to all allegations set forth in this Complaint.

4. Fannie Mae is a federally chartered and stockholder-owned corporation and existing under federal statute section 1716 et seq. (the "Charter Act"). Pursuant to the "Charter Act" Section 302 B, Fannie Mae is a District of Columbia corporation. Fannie Mae is doing business in the District of Columbia, including business at a location in the North West of Washington DC.

5. Individual Defendant # 1: Mr. Michael J. Williams is a citizen of the United States and a resident of Washington DC and is the Chief Executive Officer of Fannie Mae. In his official capacity Mr. Michael J. Williams is a necessary party for complete relief to be afforded to the plaintiff.

6. Individual Defendant # 2: Ms. Jacqueline K. Wagner is a citizen of the United States and a resident of Washington DC Metropolitan area and is the former Chief Audit Executive of Fannie Mae. In her official capacity Ms. Jacqueline Wagner is a necessary party for complete relief to be afforded to the plaintiff.

7. Individual Defendant # 3: Mr. Thomas Cooper is a citizen of the United States and a resident of the State of Virginia. Mr. Thomas Cooper was a contractor with Ernst and Young, LLC from about June 2008 to December 2008. Mr. Thomas Cooper became a Fannie Mae employee in about the end of January 2009 and held the position of Vice-President of Fannie Mae and is thus a necessary party for complete relief to be afforded to the plaintiff.

8. Individual Defendant # 4: Ms. Sanda Pesut is a citizen of the Republic of Serbia and a resident of Washington in the District of Columbia and is a Manager at Fannie Mae. In her official capacity Ms. Sanda Pesut is a necessary party for complete relief to be afforded to the plaintiff.


PRE-REQUISITES PROCEDURES


9. Plaintiff filed internal complaints about all matters alleged in this complaint with Fannie Mae's Compliance and Ethics Department in 2009.

10. Plaintiff filed a demand for arbitration against Fannie Mae with Judicial Arbitration & Mediation Services (JAMS) on July 4, 2009. On June 2, 2010, Plaintiff completed the arbitration process as required by Fannie Mae Dispute Resolution Policy for filing a claim in court.

STATEMENT OF FACTS

11. Plaintiff is a Ph.D. educated individual, he received his education from Georgetown
University's Ph.D. in Economics Program, and from the Institute of Political Studies of Paris –
France-where he studied from the freshman year to the Doctorate in economics.

12. Plaintiff went through a long and thorough recruitment process to join Fannie Mae as Senior
Financial Modeler.

13. Plaintiff's official starting date was April 28, 2008 and Plaintiff reported directly to Mr.
Philip Schlemmer, the Director of the Modeling Review team.

14. Under Mr. Philip Schlemmer direction, Plaintiff performance was deemed excellent.
Plaintiff earned a reputation as a very bright individual and excellent employee. This reputation
became known across the department.

15. In March 2008, Ms. Jacqueline Wagner was hired by Fannie Mae as the Senior Vice-
President and Chief Audit Executive (CAE) over the Company's Internal Audit Department.
Plaintiff worked in the Model Review Unit within the Internal Audit Department.

16. Early July 2008, Ms. Jacqueline Wagner restructured the Internal Audit Department.

    a) Ms. Jacqueline Wagner put Managers and Directors at the same level; both will now
report to a Vice President. In the new structure, Mr. Philip Schlemmer, the Director to whom
Plaintiff was reporting so far, was moved to another division. Ms Sanda Pesut, a Manager,
inherited the entire Model Review Unit. This included Plaintiff, and therefore Plaintiff would
now report to Ms. Sanda Pesut effective August 17, 2009.

    c) Ms. Jacqueline Wagner also announced the creation of fourteen (14) Team Lead
positions, including a Modeling Team Lead Position

d) Ms. Jacqueline Wagner created an Interview Panel/Jury to conduct the interviews and to select candidates to fill these positions.

17. Plaintiff applied, competed, and was selected by the Interview Panel/Jury for the Modeling Team Lead:

a) Plaintiff, an African-American, competed for the Modeling Team Lead position against Mrs. Karla Kucerkova, a white candidate.

b) During the deliberations of the Panel/Jury, when the Panel announced their selection for Modeling Team Lead position, they selected Plaintiff, a black male, over Mrs. Karla Kucerkova, a white woman: the white management explicitly expressed their discontent for this selection of Plaintiff, a black male, over Mrs. Karla Kucerkova, a white woman.

18. Ms. Jacqueline K. Wagner, employing executive discretion in a discriminatory manner against the Plaintiff because of his race, denied Plaintiff a salary increase with his jury selected promotion, while subsequently giving to the white candidate who lost the competition for the promotion the salary increase: As a result of this unlawful act of denial of salary increase with the promotion to the winner because he is black(Plaintiff) and subsequently giving the salary increase to the loser because she is white, Plaintiff lost about $10,000 per year.

19. After the promotion to the Team Lead position: Fannie Mae refused to give Plaintiff his leadership role associated with the position: Plaintiff was given a promotion in name but not in responsibilities.

20. On October 1st, 2008 Ms. Sanda Pesut sent a forged and fabricated document to a contractor from Ernst and Young, LLC that defamed Plaintiff: she maliciously alleged that Plaintiff has prepared the document

21. On October 10, 2008, Ms. Sanda Pesut again falsely accused Plaintiff of intellectual theft, this time to Ms. Jacqueline K. Wagner.

   a) Ms. Sanda Pesut presented a forged document that she alleged was prepared by Plaintiff.

   b) Without checking the contention, Ms. Jacqueline K. Wagner presumed the Plaintiff guilty of the crime and sentenced him without due process to denial of retention bonus (about $10,000 to $400,000 per year for 3 years).

   d) On October 10, 2008, Ms. Jacqueline Wagner also ordered Ms. Sanda Pesut to create a "Short Form Evaluation" and document this Plaintiff's alleged intellectual theft and to put it on Plaintiff's file.

22. Even after the false accusation of plagiarism was proven to be false and inflammatory, Fannie Mae failed to reverse the denial of retention bonus decision that was based on this false accusation and did not clear Plaintiff's file.

23. On October 16, 2008, Plaintiff met with Ms. Jacqueline Wagner to talk about the issues of Plaintiff denial of leadership role, work atmosphere, salary discrimination and other mistreatments.

   a) Ms. Jacqueline Wagner explained to Plaintiff that she did not know what to tell him about his complaints because he has been accused of plagiarism and has already been sentenced to loss of retention bonus.

   b) On this October 16, 2008 meeting, Plaintiff was surprised and realized that he has been accused, prosecuted, and sentenced without even knowing about any accusation. Plaintiff claimed his innocence and requested a fact check.

24. On October 31st, 2008, Plaintiff met with Ms. Jacqueline Wagner as a follow-up of their October 16, 2008 meeting.

a) For the false accusation of plagiarism, Ms. Jacqueline Wagner, said "we checked, you didn't do it, otherwise you wouldn't be here".

b) Plaintiff then asked Ms. Jacqueline Wagner to reverse the decision of denial of retention bonus she made based on the assumption that Plaintiff was guilty of the intellectual theft. Ms. Jacqueline Wagner said nothing about reversing the rushed decision.

c) Plaintiff then raised anew the issue of not receiving a salary increase with his promotion. Ms. Jacqueline Wagner then told Plaintiff the following: "for a young black man smart like you, we are happy to have your expertise; I think I'm already paying you a lot of money."

25. From August 17, 2008 to October 12, 2009, Plaintiff was subjected to ostracism and to interference with the performance of Plaintiff's work, the Modeling Team rejected the Plaintiff as Team Lead.

26. Mr. Thomas Cooper, as Vice-President of Fannie Mae, created a hostile work environment for the Plaintiff; Mr. Thomas Cooper continuously harassed Plaintiff and demonstrated racial animosity toward Plaintiff.

27. On March 11, 2009, Plaintiff formally filed a complaint with Fannie Mae's Compliance and Ethics Department for racial discrimination, defamation, and hostile work environment.

28. On March 19, 2009, Mr. Thomas Cooper de-humanized Plaintiff. Mr. Thomas Cooper kicked Plaintiff out of his office and called him a nigger: "get out of my office nigger"!

29. The same day, March 19, 2009, Plaintiff filed a complaint against Mr. Thomas Cooper about his racial slur and de-humanization with Fannie Mae's Compliance and Ethics.

30. Plaintiff was in shock and felt physically ill after this confrontation with Mr. Thomas Cooper and Plaintiff requested and was granted an early leave that day, March 19, 2009; to seek medical attention.

31 Mr. Thomas Cooper dehumanizing treatment and racial slur triggered Plaintiff's diagnosed illness. Mr. Thomas Cooper also caused Plaintiff physical pain and suffering, emotional distress and mental anguish.

32 On March 20, 2009 Plaintiff complained about Mr. Thomas Cooper's actions to Fannie Mae's Chief Executive Officer Mr. Herbert Allison.

33. Fannie Mae and Mr. Herbert Allison enabled Mr. Thomas Cooper to continue to inflict Plaintiff emotional distress and to aggravate Plaintiff's diagnosed anxiety disorder.

34. Fannie Mae retaliated against Plaintiff after his complaints were filed

    a) On about April 04, 2009, Ms. Jacqueline Wagner retaliated against Plaintiff by denying him a training opportunity to complete his certification for the Certified Mortgage Banker designation.

35. In a letter dated May 26 2009, Plaintiff complained to Mr. Michael J. Williams, the new CEO of Fannie Mae, about the treatment that he was the victim of.

36. On June 15, 2009, Fannie Mae fired Vice-President Mr. Thomas Cooper as the Fried Frank Attorneys Investigative Report found that Mr. Thomas Cooper has indeed harassed Plaintiff because of his race, this Report also found that Mr. Thomas Cooper has used the offensive epithet by kicking Plaintiff out is office in a very heinous way and said "get-out of my office Nigger".

37. On July 06 2009, the Senior Vice-President and Chief Audit Executive Officer Ms. Jacqueline K. Wagner had to leave the company following the Investigation.

38. After the firings of Vice-President Thomas Cooper and Senior Vice-President and Chief Audit Executive Jacqueline Wagner, Fannie Mae increased the retaliation against Plaintiff:

a) Plaintiff work was sabotaged in several occasions.

b) On June 22, 2009, Plaintiff filed complaints with Fannie Mae's Human Resources Departments about Ms. Sanda Pesut's sabotage,

c) On June 23, 2009, Plaintiff reported retaliatory and hostile work environment with Fannie Mae's Compliance and Ethics Departments.

d) On July 4, 2009, Plaintiff filed a demand for arbitration between him and Fannie Mae with JAMS.

e) On about June 22, 2009 Plaintiff reported issues to the EEOC. On about early July, Plaintiff talked to EEOC officers, and on August 07, 2009 Charges of Discrimination against Fannie Mae were notarized by Plaintiff and filed.

f) Plaintiff was ridiculed and called names throughout the organization.

g) Ms. Sanda Pesut consistently made unplanned additional requests unrelated to Plaintiff's work very close to when Plaintiff's reports were due.

h) Fannie Mae distorted facts and created documents with misleading statements about Plaintiff.

i) On September 22, 2009, Ms. Sanda Pesut asked Plaintiff to forgo claims against Fannie Mae or be fired. Ms. Sanda Pesut told Plaintiff that Ms. Patricia Black, the acting Chief Audit Executive, told her that she (Patricia Black) has the go-ahead from Mr. Michael Williams, the CEO, to fire Plaintiff if he doesn't drop his claims against Fannie Mae.

j) Plaintiff refused to forgo claims against Fannie Mae

39. On October 12, 2009, Fannie Mae fired Plaintiff as the Modeling Team Lead and replaced him with Karla Kucerkova, the white candidate over whom Plaintiff has prevailed for the Team Lead position.

40 Fannie Mae denied a severance package to plaintiff when terminating his employment.

41. On October 12, 2009, Fannie Mae gave the Plaintiff a Bad Check. Two banks dishonored the check and treated Plaintiff as a criminal causing him embarrassment and humiliation that added to Plaintiff's emotional distress and mental anguish.

42. On October 29, 2009, Plaintiff sent a Notice of Dishonored Check to Mr. Michael J. Williams, CEO of Fannie Mae.

43. On November 2, 2009, Fannie Mae appealed Plaintiff's unemployment benefit eligibility determined by the District Of Columbia Department of Employment Services. Fannie Mae lost the appeal in the Administrative Court of the District of Columbia.


INCORPORATION OF ALLEGATIONS

44. All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.


VIOLATIONS ALLEGED

FIRST CLAIM FOR RELIEF

*42 U.S.C. § 1981*

45. Fannie Mae denied a salary increase with his promotion to Plaintiff while giving the salary increase to the white candidate over whom Plaintiff has prevailed, a decision predicated upon racial discrimination against Plaintiff. The defendants have deprived plaintiff of his right to the

full and equal enjoyment of all benefits, privileges, terms, and conditions of plaintiff's

employment at Fannie Mae because of plaintiff's race and/or national origin in violation of *42*

*U.S.C. § 1981.*

46. Plaintiff has been damaged by virtue of defendants' conduct alleged in the foregoing

paragraph in the same manner as alleged in paragraphs 18 and 24(c) above, which are

incorporated herein by reference, and is entitled to recover these damages from the appropriate

defendants.


SECOND CLAIM FOR RELIEF

Defamation: violation of Restatement (Second) of Torts § 558-559, 570-574 and the District of

Columbia Defamation Law

47  The allegations set forth in Paragraphs 20 through 24(b) above are referenced and

incorporated as if fully set forth herein.

48  Defendants Sanda Pesut made a false and defamatory accusation of intellectual theft

concerning Plaintiff that was harmful to Plaintiff in violation of Restatement (Second) of

Torts § 558-559, 570-574 and the District of Columbia Defamation Law.

49  As a result of defendant Sanda Pesut' unlawful and improper actions, plaintiff has suffered

emotional distress; loss of esteem among his peers and acquaintances; and plaintiff's career

opportunities as Modeling Team Lead or other employee for Fannie Mae have been

immediately and seriously jeopardized, and furthermore, Plaintiff lost a retention bonus

between $10,000 to $400,000 a year for 3 years from Fannie Mae.

50  Plaintiff has been damaged in the manner set forth in paragraph 49 above and is entitled, by

virtue of Restatement (Second) of Torts § 558-559; 570-574 and the District of Columbia

Defamation Law, to recover from Fannie Mae (and any other defendant whom plaintiff learns has instructed, neglected or refused to prevent the wrongful acts alleged) all damages resulting from such wrongful neglect or refusal.

## THIRD CLAIM FOR RELIEF

*42U.S.C. § 1981*

51 The allegations set forth in Paragraphs 17 through 42 above are referenced and incorporated as if fully set forth herein.

52 Defendants Thomas Cooper and Fannie Mae subjected Plaintiff to racial harassment in the workplace, and thus a hostile work environment in violation of *42 U.S.C. Section 1981.*

53 Defendants Fannie Mae, and Mr. Michael J. Williams have allowed a racially hostile work environment to prosper against Plaintiff in violation of Plaintiff's right to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship", a violation prohibited under *42 U.S.C. § 1981.*

54 Plaintiff has been damaged by virtue of defendants' conduct alleged in the foregoing paragraph in the same manner as alleged in paragraphs 26 through 36 above, which is incorporated herein by reference, and is entitled to recover these damages from Fannie Mae or the proper defendants.

## FOURTH CLAIM FOR RELIEF

Intentional or negligent infliction of emotional distress, mental anguish and anxiety disorder
Restatement (Second) of Torts § 46

55  The allegations set forth in Paragraphs 18 through 42 above are referenced and incorporated as if fully set forth herein.

56  Defendants Fannie Mae, Thomas Cooper, Sanda Pesut and Jacqueline K. Wagner by extreme and outrageous conduct recklessly or negligently caused severe emotional distress, mental anguish, anxiety disorder and physical pain to Plaintiff in violation of Restatement (Second) of Torts § 46

57  As a result of defendants Fannie Mae, Thomas Cooper, Sanda Pesut, and Jacqueline Wagner unlawful and improper actions, plaintiff has suffered physical pain, emotional distress, mental anguish and Plaintiff has been diagnosed to suffer from anxiety disorder. Plaintiff incurred financial expenses for treatment of the Fannie Mae's inflicted anxiety disorder

58  Plaintiff has been damaged in the manner set forth in paragraphs 18 through 42 above and is entitled, by virtue of Restatement (Second) of Torts § 46, to recover from Fannie Mae (and any other defendant whom plaintiff learns has instructed, neglected or refused to prevent the wrongful acts alleged) all damages resulting from such wrongful tort.


FIFTH CLAIM FOR RELIEF

*42 U.S.C. § 1981*

59  The allegations set forth in Paragraphs 18 through 42 above are referenced and incorporated as if fully set forth herein.

60  Defendant Fannie Mae follows a practice of arbitrary discharge and continuously retaliates against employees of African descents.

61 Because Plaintiff filed several complaints about violation of his rights, racial discrimination, defendant Fannie Mae retaliated and wrongfully terminated Plaintiff in violation of *42 U.S.C. Section 1981.*

62 As a further result of defendants' above-stated actions, the plaintiff has been and is being deprived of income in the form of wages and prospective retirement benefits, social security and other benefits due to him as an employee in a sum to be proven at trial, because of plaintiff race and because he filed complaints of discriminations against the defendants.

**Concluding Statement**

63 Overall because of defendants' actions, plaintiff has suffered financial losses: salary discrimination with his promotion to Team Lead, denial of retention bonus, loss of wage income with the loss of employment. Plaintiff reputation was damaged by defendants. Plaintiff also suffered an illness caused by defendants: anxiety disorder, which caused plaintiff medical expenses and a long medical care. Plaintiff has suffered physical pain, emotional distress and mental anguish.

64 Defendants have unlawfully discriminated against the plaintiff by refusing to offer the plaintiff a salary increase for a position fairly won by competing fairly, failing to remedy discriminatory practices of its supervisory personnel; discriminating against the plaintiff on the basis of his race, and retaliating against plaintiff for opposing their unlawful acts.

65 Defendants have also acted maliciously or with reckless indifference to plaintiff's rights under the Tort Laws. But for the defendants' acts or omissions, the damages to the plaintiff would not have been incurred, and the damages were a reasonably foreseeable consequence of the tortious conducts.

WHEREFORE, plaintiff respectfully prays this Court to:

1.  Order defendant to make whole the plaintiff by providing appropriate back pay, lost retention bonus, lost wages, and reimbursement for lost 401K contribution, social security and other benefits, plus interest: Plaintiff demands damage amount of $250,000 incurred so far (amount to be shown at trial) due to defendants' wrongful actions, plus additional new damages of $10,600 per month from August 2010 to the month of make whole.

2.  Order defendant to pay plaintiff compensatory damages for pain and suffering in an amount in excess of $1,000,000;

3   Order defendant to pay plaintiff punitive damages in an amount in excess of $10,000,000,

4.  Order the defendant to be taxed with the cost of this action, including expert witness fees and reasonable attorney's fees for the plaintiff;

5.  Retain jurisdiction over this action to assure compliance with the orders of this Court and with *42 U.S.C. Section 1981 and Tort laws;*

6.  Try all issues of fact to a jury; (Plaintiff demands a jury trial for all issues of facts)

7.  Grant such additional relief as to the Court may seem just and proper.

This 27th day of July, 2010

Magloire K. Placide Ayissi Etoh
131 Summit Hall Road
Gaithersburg, MD, 20877
Tel: 301-963-1972
Fax: 301-963 1972
placide_ae@yahoo.com
Plaintiff