UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAGLOIRE K. PLACIDE AYISSI-ETOH,

    Plaintiff,

        v.

FANNIE MAE, *et al.*,

    Defendants.

Civil Action No. 10-1259 (JEB)

**MEMORANDUM OPINION**

Plaintiff Magloire K. Placide Ayissi-Etoh filed this *pro se* suit in 2010 against his former employer Fannie Mae and four corporate officers for employment discrimination, hostile work environment, retaliation, and defamation. With the case currently set for trial on September 29, 2014, the parties have been given leave to file *in limine* motions. Defendants now move to strike the punitive-damage claims against the individual Defendants and to limit claims against those Defendants to their corporate capacities. The essential question here is whether Plaintiff may proceed against the individual Defendants in their individual capacities.

The Court ultimately holds he may not. Although it finds that Defendants have waived their defense based on improper service of process, the Court concludes that the individual Defendants were not given notice that they were being sued in their individual capacities. As a result, allowing Plaintiff to proceed against them in that fashion would be highly prejudicial. Since it would be redundant, furthermore, to retain them in their corporate capacities – as Fannie

1

Mae is already a Defendant – the Court grants Defendants' Motion and dismisses the individual Defendants from the case.

## I. Background

While the procedural history of this case is lengthy, the Court need only summarize the facts relevant to the current Motion. On July 27, 2010, Plaintiff filed his initial Complaint against Fannie Mae and four current and former corporate officers: CEO Michael Williams, former chief audit executive Jacqueline K. Wagner, former vice president Thomas Cooper, and manager Sanda Pesut. See ECF No. 1. The caption lists each of these individuals as being sued in the capacities of their corporate positions. See Compl. at 1. In addition, in the "Parties" section of the Complaint, Plaintiff alleges that three of the four Defendants are "in [her/his] official capacity . . . . a necessary party for complete relief to be afforded to the Plaintiff." Id. at 2-3. (He says nothing about the capacity of the fourth.) The caption and "Parties" section remained unchanged in the Amended Complaint filed on September 1, 2010. See ECF No. 10 at 1, 3. The Prayer for Relief, moreover, states that the Defendant against which judgment is being sought is "essentially Fannie Mae," and it does not demand any specific damages from the individual Defendants. Id. at 25. Plaintiff mailed the original Complaint and summons to each of these individual Defendants by FedEx or UPS at their last known place of employment. Mot. at 4-5. The documents were received by mailroom employees, and none of the individual Defendants separately confirmed receipt of service. Id.

Soon after service, all Defendants jointly moved for summary judgment, and on September 23, 2011, the court to whom the case was initially assigned granted judgment in their favor. See Etoh v. Fannie Mae, 883 F. Supp. 2d 17 (D.D.C. 2011). Plaintiff appealed, and on April 5, 2013, the decision was reversed by the D.C. Circuit, returning the case to the district

court.  See Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 581 (D.C. Cir. 2013).  The prior trial judge subsequently recused herself, and on April 28, 2014, the case was reassigned to this Court.  A trial date has been set for September 29, 2014.

On February 14, 2014, meanwhile, Plaintiff voluntarily dismissed his punitive-damage claims against Fannie Mae upon learning that such claims were barred by 12 U.S.C § 4617.  See ECF No. 40.  A status conference addressing damages subsequently uncovered a dispute among the parties about whether Plaintiff could obtain punitive damages from – or proceed at all against – the individual Defendants.  The Court permitted briefing on the question, and Defendants have now brought this Motion asserting that they are not proper parties in their individual capacities.

**II.     Analysis**

Defendants' Motion can be broken down into three distinct arguments: First, they claim that Plaintiff has not properly served the individual Defendants.  Mot. at 3-5.  Second, they argue that the individuals were only sued in their "official capacity."  Id. at 2.  Third, they alternatively contend that the claims against Defendant Williams should be dismissed on the merits.  Id. at 6-7.  The Court will address the first two points.  As it ultimately dismisses the claims against all individual Defendants, the third issue is rendered moot.

    A.     Service of Process

For individual defendants residing in the United States, Federal Rule of Civil Procedure 4(e) authorizes three methods of service: personal delivery to the defendant, leaving the material at the defendant's residence, or delivery to an authorized agent.  Although the rule also permits service in accordance with state law, the District of Columbia Superior Court Rules of Civil Procedure do not provide for any relevant additional methods.  See Sup. Ct. R. Civ. P. 4.  In lieu

of service through these options, a plaintiff may also request a waiver of service from a defendant via first class mail or other reliable means. Fed. R. Civ. P. 4(d).

There is little doubt that Plaintiff's service of process upon the individual Defendants through FedEx and UPS does not satisfy the formal requirements of Rule 4. The rule only allows the use of mail when requesting a waiver of service, see Fed. R. Civ. P. 4(d), and such waiver does not become operative without affirmative consent from the defendant. See Cambridge Holdings Group, Inc. v. Fed. Ins. Co., 489 F.3d 1356, 1362 (D.C. Cir. 2007). There is nothing on the record that indicates that the individual Defendants gave such consent. While Plaintiff relies on Rule 5(b), which allows for service by mailing to a defendant's last known address, that rule only applies to service of papers other than the initial complaint and summons.

Plaintiff's failure to comply with these service rules, however, does not doom his case. The doctrine of waiver – of the issue itself, not of service – comes to his rescue. A party waives the defenses of lack of personal jurisdiction, improper venue, insufficient process, and insufficient service if he fails to include them in any prior motion or responsive pleading. See Fed. R. Civ. P. 12(h)(1). Defendants have filed a prior Motion to Dismiss, or, in the Alternative, for Summary Judgment on October 4, 2010. See ECF No. 16. They made no argument regarding service therein. Indeed, Defendants have waited years to raise such a defense; as a result, the Court must deem it waived.

In addition, courts have traditionally disfavored applying service requirements with "draconian rigidity" to *pro se* litigants. See Smith v. U.S. 475 F. Supp. 2d 1, 10 (D.D.C. 2006). The D.C. Circuit affirmed this policy in Moore v. Agency for Int'l Dev., 994 F.2d 874 (D.C. Cir. 1993), where it allowed a *pro se* plaintiff to correct his defective service in response to a motion to dismiss. In its decision, the Moore court stated that district courts have an obligation to

provide *pro se* litigants with "minimal notice" regarding the consequences of failure to comply with procedural rules. Id. at 876. When *pro se* plaintiffs have not been provided with such notice and the defendant has not been prejudiced, courts will give the plaintiff leave to correct his procedural defects. Smith 475 F. Supp. 2d at 10. Like the litigant in Moore, Plaintiff does not appear to have been on notice about the defects in his service and the potential for those defects to cause the dismissal of his claims. On the contrary, he would have every reason to believe that his service was not defective given that the individual Defendants had been participating in the litigation – at least in their corporate capacities – without complaint for nearly four years.

      B.      Capacity of Individual Defendants

Defendants' next argument – that the named corporate officers were only sued in their "official capacity" and not as individuals – is more persuasive. When a complaint is ambiguous, the question of whether a defendant is being sued in his individual capacity is determined by a "course of proceedings" test. See Brandon v. Holt, 469 U.S. 464, 469 (1985). This test examines how the defendants have been treated during the litigation by the court and both parties to see if there has been a common assumption about the capacity in which they have been sued. See id. at 469. It is, however, not applicable when the complaint specifically states that the defendant is being sued in his official capacity only. See Atchinson v. District of Columbia, 73 F.3d 418, 425 (D.C. Cir. 1996). Although courts do apply "less stringent standards" when interpreting the complaints of *pro se* litigants, Haines v. Kerner, 404 U.S. 519, 520-521 (1972), these complaints must still satisfy the minimum legal standard of giving the adverse party "fair notice of what Plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 507 (2002). As the Sixth Circuit has noted, "It is not too much to ask that if

a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually." Wells v. Brown, 891 F.2d 591, 593 (6th Cir. 1989), quoted in Atchinson, 73 F.3d at 426.

An examination of Plaintiff's Complaint and Amended Complaint leads to the inescapable conclusion that "fair notice" was lacking in this case. As previously noted, the caption and the list of parties explicitly state that Defendants are being sued in their official capacities – *e.g.*, "in his capacity of Chief Executive Officer of Fannie Mae" – and not as individuals. See Am. Compl. at 1, 3-4. The Prayer for Relief, moreover, states that the Defendant from whom relief is sought is "essentially Fannie Mae" and does not specifically demand relief from any of the individual Defendants. Id. at 25.

Plaintiff's attempt to proceed against Defendants in their individual capacities would, therefore, be equivalent to an attempt to amend his Complaint to add individual-capacity claims. Such an amendment would be barred by the four-year statute of limitations for 42 U.S.C § 1981 actions. See Uzoukwu v. Metro. Wash. Council of Gov'ts, 2013 WL 5425128, at *9 (D.D.C. 2013). The Court, therefore, could only grant Plaintiff leave to amend through the relation-back provision of Rule 15(c). An amendment made outside of the statute of limitations that adds new parties can "relate back" to the date of the original pleading when (1) the new claim arises from the same transaction or occurrence, and (2) the new party, within 120 days of filing, received notice of the action and became or should have become aware that it would have been sued if not for Plaintiff's mistake. See Fed. R. Civ. P. 15(c)(1)(C). In practice, courts have refined the inquiry to take into account prejudice to the defendant by determining whether the amendment would be "prejudicial [or] a surprise to the misnamed party." Rendall-Speranza v. Nassim, 107 F.3d 913, 918 (D.C. Cir. 1997).

While there is no direct evidence regarding the individual Defendants' state of mind, whether notice exists for the purpose of Rule 15(c)(1)(C) can be inferred from the factual circumstances of the case. See Gipson v. Wells Fargo Corp., 382 F. Supp. 2d 116, 120 (D.D.C. 2005). The circumstances here strongly support an inference that the individual Defendants did <u>not</u> have notice. As discussed above, the Complaint explicitly stated that the individual Defendants were only being sued as officers of Fannie Mae. See Am. Compl. at 1, 3. The improper service on the individuals also reduces the likelihood of notice. Finally, the fact that they did not retain separate counsel and consented to be represented by Fannie Mae's corporate counsel (despite potentially conflicting defenses) strongly indicates that they believed the litigation was, in truth, against Fannie Mae alone. As a result, adding them as parties with the potential of punitive damages at this very late stage would be highly prejudicial.

C. Redundancy of Claims in Official Capacity

As the individual Defendants are only being sued in their official capacities, the claims against them are redundant and should be dismissed entirely. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Court may, therefore, consolidate official-capacity claims with claims against the entity in order to prevent redundancy and avoid "confus[ion] to the jury." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991); see also Grissom v. District of Columbia, 853 F. Supp. 2d 118, 125 (D.D.C. 2012) ("Based upon the understanding that it is duplicative to name both a government entity and its employees in their official capacity, courts routinely dismiss claims against the officials to conserve judicial resources when the entity itself is also sued.") (internal quotation marks and citation omitted).

Although the holding of Graham was limited to government officials, the Court sees no basis to reach a different outcome here. Cf. McCarthy v. Azure, 22 F.3d 351, 359 (1st Cir. 1994) (discussing Graham in context of individual-capacity suit against corporate officer). Official-capacity claims do not grant Plaintiff access to any relief that would be unavailable from suing only Fannie Mae, and they needlessly increase the complexity of the case. Dismissing the redundant individual Defendants and focusing the inquiry on Fannie Mae would benefit both sides by streamlining the litigation and preventing any potential confusion of the jury.

D. Procedural Challenges

Plaintiff raises two procedural challenges to the Motion to Dismiss: (1) Defendants failed to discuss the Motion with him prior to filing, as required by Local Civil Rule 7(m), and (2) they failed to properly serve it. Neither argument holds water.

First, Rule 7(m) does not apply to dispositive motions, and this Motion is dispositive, as it seeks to dismiss all claims against the individual Defendants. Second, the Motion was filed electronically through the CM/ECF system, and electronic filing of papers constitutes service for *pro se* parties who have obtained CM/ECF passwords. See LCvR 5.4(d)(1). The Court granted Plaintiff a CM/ECF password on September 1, 2010. See Order, Sept. 1, 2010.

III. Conclusion

The Court, therefore, will grant the Individual Defendants' Motion to Dismiss. A separate Order consistent with this Opinion will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 17, 2014